KAREN L. LOEFFLER
United States Attorney

AUDREY J. RENSCHEN
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Tel: (907) 271-5071
Fax: (907) 271-1500
E-mail: audrey.renschen@usdoj.gov
AK # 9306050

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 3:09-cr-0129-JWS |
| | ) | |
| Plaintiff, | ) | **GOVERNMENT'S SENTENCING** |
| | ) | **MEMORANDUM** |
| vs. | ) | |
| | ) | |
| ANDREW WILLIAM YOUNG, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

The United States by Assistant United States Attorney Audrey J. Renschen,

submits this sentencing memorandum in anticipation of the sentencing hearing

scheduled on Wednesday, July 20, 2011, at 9:00 a.m.

## I.    The Government's Recommendation

The United States recommends **a sentence of 300 months (25 years)**

**imprisonment**, **supervised release for life**, and the **special conditions of**

**supervision** recommended by the Presentence Report writer, Pamela Shaw.

## II.     The Plea Agreement

Young agreed to plead guilty to the Information Replacing Indictment filed

in this case: Count 1, Sexual Exploitation of a Child – Production and Attempted

Production of Child Pornography in violation of 18 U.S.C. §§  2251(a) and (e), and

Count 2, Receipt and Attempted Receipt of Child Pornography in violation of 18 U.S.C.

§ 2252(a)(2) and (b)(1).  In exchange for his pleas and appellate waiver, the United

States agreed to dismiss the remaining charges in the Indictment pursuant to Fed.

R. Crim P. 11(c)(1)(a), and conditionally agreed not to file any additional charges

based on the current investigation, as long as no evidence surfaced that the

defendant had any sexual contact with children.  Further, pursuant to the plea

agreement and Fed. R. Crim P. 11(c)(1)(c), the parties are free to make sentencing

recommendations within a sentencing range of 15 to 25 years, and the United

States will recommend an adjustment for acceptance of responsibility.

## III.    The Sentencing Guidelines Assess Young's Conduct As Extremely Serious

The undisputed Presentence Report calculates a final offense level of 38 for

two non-grouping offenses that included upward adjustments for:

•      Young's sexual exploitation involving a minor who had not attained 12

years of age,

- Young's sexual exploitation of his adoptive child during his custodial role as a pending adoptive parent,

- Young's knowledge that the adoptive child whom he sexually exploited was an unusually vulnerable victim who had been previously sexually, physically and mentally abused,

- Young's receipt of child pornography images involving children under 12 years of age,

- Young's receipt of material depicting bestiality with children and bondage with sexual abuse of children, that involved material portraying sadistic or masochistic conduct, or depictions of violence,

- Young's use of a computer, and

- Young's receipt of over 60,325 sexually explicit images of children.

(Presentence Report pp. 18-21)

Young's Sentencing Guidelines range is 235-293 months, based on an offense level 38, and criminal history I, with a potential upward departure warranted under U.S.S.G. § 2G2.2 for multiple videos in excess of five minutes, and an assessment that Young poses a significant risk to minor children.

(Presentence Report pp. 32-33)

**IV.    The Sentencing Factors Under 18 U.S.C. § 3553(a) Provide Additional Support for a Finding That Young's Conduct Was Unusually Serious, and the Government's Recommendation of 25 Years Imprisonment Is an Appropriate One**

While the Court must consider both aggravating and mitigating sentencing factors at sentencing, the government's focus here will be only on aggravating 3553(a) factors, with the understanding that Young's memorandum will focus only on mitigating 3553(a) factors. At sentencing, the government will offer its analysis of all the aggravating and mitigating arguments presented.

### A.    The Nature and Circumstances of the Offenses and the History and Characteristics of the Defendant

As shown below, there are significant additional aggravating sentencing factors here that are not considered in the Sentencing Guidelines calculation. The Presentence Report and discovery materials document Young's child sexual exploitation that extends back more than 25 years, but that is not reflected in the final Sentencing Guidelines range.

The evidence shows Young did not engage in an isolated impulsive indiscretion in committing his crime. Young was deeply involved in the world of child sexual exploitation since 1983-1984, and that his life's work centered on jobs that placed him in everyday contact with vulnerable children whom he treated for psychological issues or taught as an educator. (Presentence Report p. 6, ¶ 27, and

pp. 26-28, ¶¶ 138-149) Young's counts of conviction reveal only a microcosm of his sexual interest in children, and a chosen lifestyle of child sexual exploitation.

### 1. Charged Offense Conduct Centers on Young's Sexual Exploitation of Children, Including His Adopted Child

Young sexually exploited his adopted son, whom he knew before adoption was a vulnerable victim, by taking lascivious photographs of the ten year old boy's genitals, by attempting to take additional photos, and by maintaining those photographs for more than seven years, through transfers from Texas to Iraq, Florida, Virginia and Wisconsin, before settling in Alaska. (Presentence Report p.22, ¶ 121)

Although there is no evidence of Young committing contact offenses thereafter, he continued to sexually exploit children by downloading and collecting roughly 4,300 individual images, and 747 videos – the equivalent of 60,325 images of child pornography. (Presentence Report p. 19, ¶ 98) That continued conduct again involved children under 12 years of age, and included some graphically sadistic, masochistic, and violent depictions. (Presentence Report p. 18, ¶¶ 94-95)

### 2. Young's Personal History Provides Additional Evidence Of His Sexual Interest In Children, and His Exploitation of Them

Although Young's prior "camp" history was not recognized under the

Sentencing Guidelines, that history of sexually exploiting children emphasizes Young's continued and long-term patterns of dangerous behavior. Printed photographs bearing Young's handwriting on the reverse side show that while he was in his early twenties he was already victimizing children under ten by collecting sexually exploitive, lascivious photographs of them. (Presentence Report pp. 5-6, ¶ 27) The further fact that he maintained those exploitive images almost thirty years longer, shows the depth and darkness of a child predator. Young has repeatedly put his sexual self-gratification before the protection of children, despite the "helping" profession he appeared to be dedicated to. Closer examination of his career choices suggest they were intended to sexually satisfy him rather than to serve children's needs. Young shows no apparent insight or concern for the obvious harms he has repeatedly caused the children being sexually exploited in his child pornography pictures and videos.

Such a history of patent disregard for harms against children demonstrates what a real danger Young is to the community, and why an extremely lengthy sentence and supervision are required.

### B. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense

To an adult, Young's sexual exploitation of children is startlingly obvious

manipulation. However, his adopted son was not so quick to spot the manipulation. When first being considered by Young for adoption, C.Y. was predictably eager for the attention, praise and trust of a complimentary adult. He recognized an uncomfortable sexual touch, and directly confronted and threatened Young. (Presentence Report p. 12, ¶ 58) Yet Young's subsequent sexual interest and attempts to obtain lascivious exhibitions of C.Y.'s genitals were not transparent to the then-ten year old: "C.Y. described the pictures as 'just me goofing off' . . . it did not occur to him that the pictures may be inappropriate." (Presentence Report p. 14, ¶ 70) It was not until C.Y. was 17 years old that he recognized the manipulation: "he was 'disgusting, wrong, and messed up' for adopting C.Y., because Young liked 'that kind of stuff.'" (Presentence Report p. 13, ¶ 65)

Young's use of his adopted son and his career choices allowed him to engage in "relationships" with children and to present himself in a way that hid the harsh realities of his self gratification.  Young's deceptive methods offered him privacy and secrecy, and made it easy for Young to sexually fantasize about and exploit children. (Presentence Report pp. 10-11, ¶¶ 53-54) Those actions allowed Young to steal the childhood and the innocence of the children he targeted. (*See*, *e.g.,* victim impact statements in Presentence Report at pp. 37-57.)

To recognize that serious harm, Young's punishment must be

correspondingly as serious. His sentence must send a message that adults who take advantage of children's naivete, their vulnerability, or their trust, will be duly punished. As an adult, Young had the ability to make choices that his vulnerable child victims did not. As an adult, Young and others similarly situated must be held responsible for those dangerous and harmful choices.

## C. The Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct

Young has stepped up and admitted his guilt to the charged crime. That admission and willingness to accept punishment is an important first step in specific deterrence. However, the general deterrence of other offenders who sexually exploit children must also be considered. Young's conduct provided a demand in the market for the victimization of prepubescent children used to produce child pornography images. As Congress has noted, such self-gratification at the expense of children is the kind of conduct that must be seriously punished to generally deter others in the community from similar conduct.

Notification that this Court takes Young's conduct seriously, and that it will not tolerate such harms to children will ring through a small community like Alaska where Internet usage is the highest per capita in the nation. More importantly, serious punishment in this case will send an unmistakable message that adult exploiters like Young can expect to be held accountable for their sexual

misconduct with children.

### D.    The Need for the Sentence Imposed to Protect the Public from Further Crimes of the Defendant

While Young has no prior convictions, his long term conduct presents a pattern of obviously unexamined and self-absorbed conduct. Young has demonstrated the serious danger he poses to children and to others in the community. He has demonstrated that dangerousness not just sporadically, but consistently over his adult life. He has not demonstrated any ability or inclination to change. His adult life has been all about him, regardless of how others are impacted. A serious sentence will appropriately isolate and punish Young's conduct, and protect the public from his selfish and very dangerous conduct.

### E.    The Need for the Sentence Imposed to Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner

Considering Young's education, training and experience, it is difficult to conceive that he can be open to rehabilitation when he has repeatedly turned his back to the harm he has caused children. Nonetheless, the Presentence Report writer has prepared an outline of recommended conditions of supervised release that will assist Young on his release from prison. However, because of Young's age and prior conduct as set forth above, the United States recommends that those

conditions and accompanying treatment options not supplant punishment for the serious nature of Young's conduct. A long term of isolation is necessary to protect the public, and Young still requires close and lengthy supervision upon his release.

### F. The Kind of Sentences Available and Their Sentencing Ranges

These factors have been ably described in the Presentence Report at pp. 29-33. Because of the serious nature of his crimes of producing child pornography, Young faces a mandatory minimum sentence of fifteen years, and for receiving child pornography, a mandatory minimum of five years imprisonment. By virtue of the plea agreement, Young has escaped additional charges for production and possession of child pornography, and faces a sentence between 15 and 25 years.

### G. Pertinent Policy Statements of United States Sentencing Commission

The U.S.S.G. policy statements recognize that Congress sought to restrict the ability of courts to grant downward departures in cases of sexual exploitation of children. The instant offenses involve violations of 18 U.S.C. § 2251 and 2252, under Chapter 110 of the United States Code, which are covered offenses under § 401(d) of the PROTECT Act, Pub.L. 108-21, 117 Stat. 650 (April 30, 2003). The Protect Act amended 18 U.S.C. §§ 3553(b)(2) and 3742(e) by limiting district judges' options in downward departures and requiring appellate courts to review

downward departures *de novo*. The Commentary to U.S.S.G. § 5K2.0 explains that the standard for a downward departure in child crimes and sexual offenses differs from the standard for other departures under the policy statement by including a requirement . . . "that any mitigating circumstances that form the basis for such a downward departure be affirmatively and specifically identified as a ground for downward departure." Commentary to § 5K2.0, Scope of Policy Statement 4(B)(I).

However, following United States v. Booker, 543 U.S. 220 (2005), the Sentencing Guidelines are, of course, only advisory. The Ninth Circuit has declined to adopt an appellate "presumption" of reasonableness for sentences imposed within the Sentencing Guidelines range, but has made clear that a correctly calculated Guidelines sentence will normally not be found unreasonable on appeal. United States v. Carty, 520 F.3d 984, 988 (9th Circuit, 2008).

Neither Young's conduct nor his circumstances mitigate his conduct when compared to that of the multitude of other sex offenders considered by the Sentencing Commission in promulgating the Guidelines. Lack of criminal history, middle age, consistent professional employment and the fact that Young exploited children from the comfort of his own home, are not sufficient reasons to justify a downward departure from the 235-293 months range of imprisonment. These are heartland factors under 18 U.S.C. §§ 2251 and 2252 child exploitation offenses,

Case 3:09-cr-00129-JWS   Document 101   Filed 07/14/11   Page 11 of 15

that cannot be mitigated. Furthermore, Young's plea agreement, if accepted by the Court, requires a sentence between 15 and 25 years imprisonment.

### H. The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct

In undersigned counsel's experience, no non-contact offender in the District of Alaska has been convicted of the production and receipt of child pornography that resulted in an offense level 38, or Sentencing Guidelines range of 235-293 months. Young is the worst offender in that regard in this district.

### I. The Need to Provide Restitution to Any Victims of the Offense

In the plea agreement, the parties agreed that restitution is mandatory in this case, and will be determined by the probation officer on behalf of the court, pursuant to 18 U.S.C. § 2259. Plea Agreement, p. 13.

C.Y., a child victim who is now an adult living Outside since he fled Alaska upon discovery of Young's child pornography, has not yet submitted a victim impact statement, nor restitution been identified. (Presentence Report p. 15, ¶ 78) The government has been unable to contact C.Y., despite concerted efforts, and will continue to try and contact him before the sentencing date. If unsuccessful, the amount of restitution will not be ascertainable, and the government will request additional time under 18 U.S.C. § 3664(d)(5): "If the victim's losses are not

ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing."

Another identified victim, "Vicky", seeks restitution for future counseling expenses, educational and vocational needs, lost earnings, out of pocket expenses for a psychological evaluation, supporting records, and travel, attorney travel costs, and for attorney fees. (Presentence Report pp. 15-16, ¶ 79) The government is not authorized to modify that request for $1,072.263.83, but urges that if the Court is unwilling to grant the full amount, to at least impose a reasonable amount, comparable to the $3,000 approved by other district courts in the Ninth Circuit: United States v. Baxter; No. 09-30364, 2010 WL 3452537, at *1 (9th Cir. Sept. 1, 2010), United States v. Monk, 2009 WL 2567831 (E.D. Cal. Aug. 18, 2009) (awarding $3,000 in restitution to victims Amy and Vicky); United States v. Zane, 2009 WL 2567832 (E.D. Cal. Aug. 18, 2009) (awarding $3,000 in restitution to victims Amy and Vicky).

## V.      Guideline and Non-Guideline Considerations Blend for Purposes  of the Government's Sentencing Recommendation

The United States recommends Young be sentenced to the top of the agreed upon plea agreement sentencing range, and seven months higher than the

Sentencing Guidelines range, to a term of 300 months, or 25 years imprisonment. That sentence takes into account Young's acceptance and guilty plea, and also measures the severity of his conduct in exploiting and manipulating children for most of his adult life, and for his self gratification without regard for the lifelong harms he caused the victims depicted in his child pornography. The Sentencing Guidelines and the 3553(a) factors in this case both point to the need for serious punishment to respond to Young's's serious crimes.

The true nature of the images involved, the true nature of the harm caused to the victims, the true dynamic of the crimes, and the true threat of this defendant requires nothing less. Young's persistent exploitation of children epitomizes the need for safeguarding children noted by the Supreme Court in *New York v. Ferber*, 458 U.S. 747, 756-57, 58 (1982):

> "It is evident beyond the need for elaboration that a State's interest in safeguarding the physical and psychological well-being of a minor is compelling ... [and that] the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child" (internal quotation and citation omitted).

## VI.    Conclusion

The government respectfully requests that the Court sentence Young to a

term of 300 months imprisonment, and lifetime supervised release. As shown

above, such a sentence is legally consistent with both the Sentencing Guidelines

and the 18 U.S.C. § 3553(a) factors.

RESPECTFULLY SUBMITTED this 13th day of July, 2011, in Anchorage,

Alaska.

KAREN L. LOEFFLER
United States Attorney

s/ Audrey J. Renschen
AUDREY J. RENSCHEN
United States of America

**CERTIFICATE OF SERVICE**
I hereby certify that on July 13, 2011
a copy of the foregoing was served
electronically on:

Steve Wells
s/ Audrey J. Renschen